No. 22-50185

# IN THE UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

UNITED STATES OF AMERICA,
*Plaintiff-Appellant*,

*v.*

JEFFREY OLSEN,
*Defendant-Appellee*.

*APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE CENTRAL DISTRICT OF CALIFORNIA
DISTRICT COURT NO. CR 17-76-CJC*

## GOVERNMENT'S OPENING BRIEF

E. MARTIN ESTRADA
United States Attorney

BRAM M. ALDEN
Assistant United States Attorney
Chief, Criminal Appeals Section

DAVID R. FRIEDMAN
Assistant United States Attorney
Criminal Appeals Section

1000 United States Courthouse
312 North Spring Street
Los Angeles, CA 90012
Telephone: (213) 894-7418
Email: David.Friedman@usdoj.gov

Attorneys for Plaintiff-Appellant
UNITED STATES OF AMERICA

# TABLE OF CONTENTS

**DESCRIPTION**                                                                                      **PAGE**

I.    INTRODUCTION.................................................................1

II.   ISSUES PRESENTED ...................................................3

III.  STATEMENT OF THE CASE .......................................3

    A.   Jurisdiction, Timeliness, and Bail Status .............................3

    B.   Statement of Facts and Procedural History ..........................4

        1.   Defendant is charged with illegally distributing prescription drugs ......................................................4

        2.   While on bond, defendant obtains eight continuances of the trial date .......................................5

        3.   The Central District of California temporarily suspends jury trials due to COVID-19 .........................6

        4.   The district court dismisses the indictment with prejudice ........................................................7

        5.   This Court reverses and orders the district court to set this case for trial ...............................11

        6.   Defendant's requests for further review are denied .............................................................15

        7.   The district court again dismisses the indictment with prejudice..............................................16

IV.  SUMMARY OF ARGUMENT ......................................23

V.   ARGUMENT ..............................................................25

    A.   The District Court Violated the Rule of the Mandate..........25

# TABLE OF CONTENTS (continued)

**DESCRIPTION**                                                                    **PAGE**

    1.   Standard of review ......................................................25

    2.   The district court did not follow this Court's express instructions to set this case for trial .............25

  B.  The District Court Abused Its Discretion By Again Dismissing the Indictment with Prejudice ..........................30

    1.   Standard of review ......................................................30

    2.   The district court relied upon the same analysis that was rejected by this Court in the first appeal .....30

       a.   The district court erred by finding a violation of the Speedy Trial Act ........................31

       b.   The district court erred by dismissing the indictment with prejudice ...................................35

  C.  This Case Should Be Reassigned to Another District Judge ..................................................................36

VI.  CONCLUSION ................................................................40

# TABLE OF AUTHORITIES

**DESCRIPTION**                                                        **PAGE(S)**

## Federal Cases

*Hart v. Massanari,*
    266 F.3d 1155 (9th Cir. 2001) ........................................................ 30

*In re Approval of the Jud. Emergency Declared in the Cent. Dist. of Cal.,*
    955 F.3d 1140 (9th Cir. 2020) ................................................... 6, 35

*In re Sanford Fork & Tool Co.,*
    160 U.S. 247 (1895) ........................................................................ 30

*Nat'l Council of La Raza v. Cegavske,*
    800 F.3d 1032 (9th Cir. 2015) ....................................................... 39

*Olsen v. United States,*
    142 S. Ct. 2716 (2022) ................................................................... 16

*Price Bros. Co. v. Phila. Gear Corp.,*
    629 F.2d 444 (6th Cir. 1980) ......................................................... 39

*Shepherd v. Unknown Party,*
    5 F.4th 1075 (9th Cir. 2022) (per curiam).................................... 27

*Small v. Hunt,*
    98 F.3d 789 (4th Cir. 1996) ........................................................... 39

*United States v. Garcia-Beltran,*
    443 F.3d 1126 (9th Cir. 2006) ....................................................... 25

*United States v. Kellington,*
    217 F.3d 1084 (9th Cir. 2000) ................................................. 25, 30

*United States v. Lewis,*
    833 F.2d 1380 (9th Cir. 1987) ....................................................... 39

# TABLE OF AUTHORITIES (continued)

**DESCRIPTION**                                                       **PAGE(S)**

*United States v. Olsen,*
--- F. Supp. 3d ----,
2022 WL 4493853 (C.D. Cal. Aug. 22, 2022) ................................. 20

*United States v. Olsen,*
21 F.4th 1036 (9th Cir. 2022) (per curiam) ........................... passim

*United States v. Olsen,*
494 F. Supp. 3d 722 (C.D. Cal. 2020) ........................................... 10

*United States v. Paul,*
561 F.3d 970 (9th Cir. 2009) (per curiam) ................... 23, 25, 28, 38

*United States v. Perez,*
475 F.3d 1110 (9th Cir. 2007) ...................................................... 30

*United States v. Rivera,*
682 F.3d 1223 (9th Cir. 2012) ...................................................... 37

*United States v. Sears, Roebuck & Co.,*
785 F.2d 777 (9th Cir. 1986) (per curiam) ............................. 27, 38

*United States v. Thrasher,*
483 F.3d 977 (9th Cir. 2007) ....................................................... 25

*United States v. Wells,*
879 F.3d 900 (9th Cir. 2018) ........................................................ 37

*United States v. Wolf Child,*
699 F.3d 1082 (9th Cir. 2012) ........................................... 24, 36, 37

*United States v. Yamashiro,*
788 F.3d 1231 (9th Cir. 2015) ...................................................... 39

## Federal Statutes

18 U.S.C. § 3161(h)(7) .............................................................. 10, 12, 31

iv

# TABLE OF AUTHORITIES (continued)

## DESCRIPTION                                                    PAGE(S)

18 U.S.C. § 3162(a)(2)..................................................................14

18 U.S.C. § 3231 ...........................................................................3

18 U.S.C. § 3731 ...........................................................................3

21 U.S.C. § 841(a)(1)......................................................................4

21 U.S.C. § 843 .............................................................................4

28 U.S.C. § 455 ...........................................................................39

28 U.S.C. § 1291 ...........................................................................3

### Federal Rules

Fed. R. App. P. 4(b)(1)(B) ..........................................................4

No. 22-50185

# IN THE UNITED STATES COURT OF APPEALS FOR THE NINTH CIRCUIT

UNITED STATES OF AMERICA,
*Plaintiff-Appellant*,

*v.*

JEFFREY OLSEN,
*Defendant-Appellee.*

*APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE CENTRAL DISTRICT OF CALIFORNIA DISTRICT COURT NO. CR 17-76-CJC*

## GOVERNMENT'S OPENING BRIEF

# I

# INTRODUCTION

Defendant Jeffrey Olsen, a physician, is charged with unlawfully prescribing oxycodone and other drugs to his patients—four of whom died of overdoses. In October 2020, the district court dismissed the indictment with prejudice based on its disagreement with the Central District of California's decision to suspend jury trials during the height of the COVID-19 pandemic. This Court reversed and remanded "with

instructions to reinstate Olsen's indictment, grant an appropriate ends of justice continuance, and set this case for a trial." *United States v. Olsen*, 21 F.4th 1036, 1049 (9th Cir. 2022) (per curiam) (emphasis omitted). The district court defied that directive and instead dismissed the indictment with prejudice once again.

The new dismissal order should be reversed for two independent reasons. First, the district court violated the rule of the mandate by not following this Court's express instruction to set this case for trial. Second, the district court abused its discretion by dismissing the indictment based on the same reasoning that this Court rejected the first time around. The district judge's repeated errors arise from his disagreement with his colleagues' decision to suspend jury trials to protect public health, and reflect a personal opinion so intractable as to prevent him from carrying out this Court's orders. Accordingly, this Court should reverse and remand with instructions that this case be reassigned and set for trial.

## II

## ISSUES PRESENTED

A.     Whether the district court violated the rule of the mandate by again dismissing the indictment with prejudice, instead of following this Court's express "instructions to reinstate Olsen's indictment, grant an appropriate ends of justice continuance, and set this case for a trial." *United States v. Olsen*, 21 F.4th 1036, 1049 (9th Cir. 2022) (per curiam) (emphasis omitted).

B.     Whether the district court abused its discretion by again dismissing the indictment with prejudice based on the same reasoning that this Court rejected in *United States v. Olsen*, 21 F.4th 1036 (9th Cir. 2022) (per curiam).

C.     Whether this case should be reassigned to a different district judge.

## III

## STATEMENT OF THE CASE

### A.     Jurisdiction, Timeliness, and Bail Status

The district court's jurisdiction rested on 18 U.S.C. § 3231.  This Court's jurisdiction rests on 28 U.S.C. § 1291 and 18 U.S.C. § 3731.  The

district court entered the order under review on August 22, 2022. (1-ER-2–63.)[1] The government filed a timely notice of appeal on August 23, 2022. (5-ER-790.) *See* Fed. R. App. P. 4(b)(1)(B). Defendant is not in custody.

## B. Statement of Facts and Procedural History

### 1. *Defendant is charged with illegally distributing prescription drugs*

Defendant Jeffrey Olsen is a physician who operated as a drug dealer. He prescribed and distributed large quantities of oxycodone and other controlled substances to his patients without a legitimate medical purpose. (*See* 4-ER-481; 5-ER-782–87.) Over the course of several years, four of defendant's patients died of prescription drug overdoses. (4-ER-506, 544.) Defendant was notified of at least two of those deaths but continued to misuse his license. (4-ER-481, 506, 544–46.)

In July 2017, a grand jury indicted defendant for 34 counts of unlawfully distributing controlled substances, 21 U.S.C. § 841(a)(1), and one count of furnishing false information to the DEA, 21 U.S.C. § 843. (5-ER-782–87.) That same month, he made his initial appearance and

---

[1] "CR" refers to the Clerk's Record in the district court, and "ER" refers to the Excerpts of Record filed by the government.

was released on a $20,000 unsecured appearance bond.  (CR 10, 14.)

### 2. *While on bond, defendant obtains eight continuances of the trial date*

Trial was initially set for September 2017.  (CR 10.)  Over the next three years, defendant sought and obtained eight continuances of the trial date.  The first five, which defendant obtained by stipulation, continued the trial from September 2017 to November 2019.  (4-ER-737–57; 5-ER-759–81.)  The sixth, which defendant obtained over the government's objection, continued the trial to May 2020.  (4-ER-719–20, 731–36; *see also* 4-ER-724–25 (prosecutor objecting to continuance, which "would represent about two and a half years" of delay, because "it's very difficult" to organize witnesses "when the trial date continues to be extended further out").)

After the COVID-19 pandemic hit in March 2020, defendant sought and obtained two more continuances via stipulation.  (4-ER-703–18.)  The stipulations documented courtroom restrictions imposed due to the pandemic and noted that public health concerns interfered with trial preparation.  (4-ER-707–08, 715–16.)  Together, the seventh and eighth continuances moved the trial to October 13, 2020.  (4-ER-703–04, 711–12.)

### 3. *The Central District of California temporarily suspends jury trials due to COVID-19*

Beginning in March 2020, the Central District of California issued a series of emergency orders in response to COVID-19. As part of its pandemic response, the Central District declared a judicial emergency, which this Court approved. *In re Approval of the Jud. Emergency Declared in the Cent. Dist. of Cal.*, 955 F.3d 1140 (9th Cir. 2020). The Central District also suspended all jury trials beginning in March 2020. C.D. Cal. General Order 20-02 (March 17, 2020). That suspension was extended several times, including by "a majority vote" of the Central District's judges in August 2020. C.D. Cal. General Order No. 20-09 (Aug. 6, 2020); *see also* C.D. Cal. General Order 20-05 (April 13, 2020); C.D. Cal. Amended General Order 20-08 (May 28, 2020); C.D. Cal. General Order 21-03 (March 19, 2021).[2]

The August 2020 order, "General Order 20-09," explained that the rates of infections, hospitalizations, and deaths had all "significantly increased in the Central District of California in the last thirty days

---

[2] The Central District's COVID-related orders can be found at https://www.cacd.uscourts.gov/news/coronavirus-covid-19-guidance.

such that holding jury trials substantially increase[d] the chances of transmitting the Coronavirus." General Order 20-09 at 3. The Court concluded that conducting jury trials risked putting "prospective jurors, defendant, attorneys, and court personnel at unnecessary risk." (*Id.*) Therefore, the Court found that continuing the suspension of trials to protect public health "serve[d] the ends of justice and outweigh[ed] the interests of the public and the defendants in a speedy trial." (*Id.*)

The districtwide suspension of jury trials lasted until May 2021, when trials resumed in the Southern Division—where defendant's case was being heard. *See* C.D. Cal. General Order No. 21-07 (April 15, 2021). When the Omicron wave hit at the beginning of 2022, the chief judge ordered another brief suspension that lasted around seven weeks. Order of the Chief Judge 22-004 (Feb. 8, 2022). Since February 2022, jury trials have been ongoing in the Central District.

### 4. *The district court dismisses the indictment with prejudice*

In August 2020, when jury trials were suspended by court order, the district court held a status conference. (4-ER-670–702.) At the outset, defendant confirmed that he refused to consent to a further continuance of his October 2020 trial date. (4-ER-672.) The prosecutor

7

responded that an ends of justice continuance was appropriate due to COVID-19; the Central District's orders suspending trials; and the absence of protocols to ensure the safety of jurors, witnesses, court staff, litigants, defendant, and the public. (4-ER-673–74.) The district judge "disagree[d]," explaining that his views diverged from those of "the great majority of the judges" in the Central District. (4-ER-675.) The judge noted that he had previously attempted to summon jurors but the chief judge had denied his request, "making essentially the same argument that [the prosecutor] made: it's just not safe to conduct a trial." (4-ER-675–76.) However, because trials were taking place in nearby state courts, the judge believed that the standard for a continuance could not be met; he could not "say with a straight face that it's impossible to conduct a jury trial safely." (4-ER-681–82.)

After the hearing, the government moved to continue the trial from October to December 2020. (4-ER-651–69.) The district court denied the government's motion and requested that the chief judge direct the issuance of juror summonses. (4-ER-591–641.) The chief judge promptly issued a written order rejecting that request. (4-ER-589–90.) As the chief judge explained, the majority of the Central

District's district judges had approved the jury trial suspension as "necessary to protect the health and safety of prospective jurors, defendants, attorneys, and court personnel due to the Coronavirus Disease 2019 pandemic." (4-ER-589.) The chief judge declined to "overrule or disregard" this decision. (4-ER-590.)

As suggested by the district court (4-ER-559), defendant then moved to dismiss the indictment with prejudice for failure to hold a speedy trial. (CR 85.) At the motion hearing, the district judge criticized the United States Attorney's Office for "staying silent" rather than disagreeing with his colleagues who had voted to suspend jury trials. (4-ER-507–08.) The judge proceeded to compare the case to *Korematsu*, the internment of Japanese-Americans during World War II, and the denial of civil rights to African Americans in the South. (4-ER-519–20.)

Even so, the district judge found no "fault" in the government. (4-ER-526.) Instead, the judge faulted his colleagues, accusing them of "misconduct" and stating that what "the judges did here is very wrong." (4-ER-529, 531.) And while the judge had issued a tentative decision to dismiss the indictment without prejudice, he decided to throw that "in

9

the garbage" (4-ER-538), and dismiss with prejudice so there would be "consequences to the judges in the Central District" (4-ER-521).

On October 14, 2020, the district court issued an order dismissing the indictment with prejudice for violation of the Speedy Trial Act. (4-ER-465–89.) *See United States v. Olsen*, 494 F. Supp. 3d 722 (C.D. Cal. 2020). The court reasoned that the ends of justice provision, 18 U.S.C. § 3161(h)(7)(A), applied only to "*actual impossibility*"—meaning that a trial was "a physical and logistical impossibility." (4-ER-472–73 & n.4.) And the court explained that, while "the current pandemic is serious," it did not make holding trials physically or logistically impossible. (4-ER-473–74.) To illustrate, the court pointed out that federal grand juries were meeting and state court trials were occurring. (4-ER-474–75.) Consequently, the court rejected the government's reliance on General Order 20-09: while that order was premised on the fact that the pandemic made trials "*unsafe*," it did "not say that it is impossible to conduct a jury trial." (4-ER-475.)

The district court further concluded that dismissal of the indictment "must be with prejudice." (4-ER-484.) The court admitted that the "extremely serious" charged crimes "weigh[ed] in favor of a

10

dismissal without prejudice." (4-ER-481.) But, according to the court, the Central District's suspension of jury trials and refusal to summon jurors had to be sanctioned. (4-ER-481–82.) Ultimately, dismissal with prejudice was "the only sanction with enough teeth to create any hope of deterring additional delay in the resumption of jury trials." (4-ER-482.)

Over the next few months, the district judge relied upon the same reasoning to dismiss the indictment in several other cases, entering substantially verbatim orders. (*See* 1-ER-16 n.6 (listing cases).)

## 5. *This Court reverses and orders the district court to set this case for trial*

The government pursued an expedited appeal of the district court's dismissal order. In April 2021, this Court reversed in a unanimous decision, which was later amended upon denial of rehearing en banc. *United States v. Olsen*, 21 F.4th 1036 (9th Cir. 2022) (per curiam).[3] This Court held that the district court made three separate errors in finding a violation of the Speedy Trial Act.

_____

[3] This Court made a minor change to a footnote in the amended opinion—a change with which the government agreed. (*See* Dkt. 54 at 3 n.1, C.A. No. 20-50329.) The opinion was otherwise unchanged.

11

First, the district court erred by concluding that "literal impossibility is the relevant standard for an ends of justice continuance" under the Speedy Trial Act. 21 F.4th at 1044. No precedent "establishes a rule that an ends of justice continuance requires literal impossibility." *Id.* at 1045. Indeed, a "proper reading" of 18 U.S.C. § 3161(h)(7)(B)(i) "compels the opposite result." *Id.* Because the failure to grant a continuance made it impossible to proceed with defendant's prosecution when trials were suspended, that provision actually *supported* a continuance. *Id.* As a result, "the district court committed clear error by reading the word 'impossible' from 18 U.S.C. § 3161(h)(7)(B)(i) in isolation." *Id.* That was "enough for [this Court] to reverse." *Id.*

Second, "[b]y solely focusing on the word 'impossible' in 18 U.S.C. § 3161(h)(7)(B)(i), the district court also overlooked the rest of the provision, which requires courts to ask whether the district court's failure to apply an ends of justice continuance 'would . . . result in a miscarriage of justice.'" *Id.* at 1046 (ellipsis in original). As this Court highlighted, defendant was charged with a serious offense, granted pretrial bond, and obtained eight continuances, including one over the

government's objection, before claiming a speedy trial violation. *Id.* For its part, the government "was wholly blameless" for the delay. *Id.* It was "troubling" that the district court had failed "to even mention these important facts in its dismissal order." *Id.* In any event, this Court had "no difficulty in concluding that the district court's failure to grant the government's motion and subsequent dismissal of Olsen's indictment, under the unique facts of Olsen's case and the Central District's suspension of jury trials, resulted in a miscarriage of justice." *Id.*

Third, "the district court failed to consider other, non-statutory factors" too. *Id.* This Court provided a "non-exhaustive list" of factors that are relevant to the ends of justice analysis "in the context of the COVID-19 pandemic": "(1) whether a defendant is detained pending trial; (2) how long a defendant has been detained; (3) whether a defendant has invoked speedy trial rights since the case's inception; (4) whether a defendant, if detained, belongs to a population that is particularly susceptible to complications if infected with the virus; (5) the seriousness of the charges a defendant faces, and in particular whether the defendant is accused of violent crimes; (6) whether there is a reason to suspect recidivism if the charges against the defendant are

dismissed; and (7) whether the district court has the ability to safely conduct a trial." *Id.* at 1046-47. However, the district court had not considered any of them. *Id.* at 1047.

On top of those errors, the district court made an "additional error in dismissing [the] indictment *with* prejudice." *Id.* In determining whether to dismiss a case with or without prejudice, a district court must consider, among other factors, (1) the seriousness of the offense, (2) the facts and circumstances of the case which led to the dismissal, and (3) the impact of a reprosecution on the administration of both the Speedy Trial Act and justice. *Id.* at 1048 (citing 18 U.S.C. § 3162(a)(2)). These factors must be carefully applied "to each particular case." *Id.* Nevertheless, "the only case-specific factor the court considered was the seriousness of Olsen's crimes, which it properly weighed against a dismissal with prejudice." *Id.* The balance of the district judge's analysis had "focuse[d] only on the Central District's suspension of criminal jury trials and his disagreement with his colleagues' decision to vote in favor of suspension." *Id.* That was "legal error" because the judge overlooked "key factors relevant to Olsen's case: the absence of prosecutorial culpability and the multiple continuances requested by

Olsen." *Id.*

The district court further erred by characterizing dismissal without prejudice as a "meaningless result" that would allow the government to reindict "and proceed as if no constitutional violation ever occurred." *Id.* at 1048. The district court's reasoning conflicted with Supreme Court precedent holding that "dismissal without prejudice is not a toothless sanction." *Id.* at 1048-49 (cleaned up).

Based on those multiple errors, this Court concluded with a simple directive, written in bold: "**The judgment of the district court is REVERSED and REMANDED with instructions to reinstate Olsen's indictment, grant an appropriate ends of justice continuance, and set this case for a trial.**" *Id.* at 1049.

### 6. *Defendant's requests for further review are denied*

Defendant filed a petition for panel rehearing and rehearing en banc, which this Court denied in January 2022. (Dkts. 48, 55, C.A. No. 20-50329.) Two judges dissented from the denial of rehearing, opining that the Central District's suspension of jury trials did not justify a continuance. 21 F.4th at 1065-81 (Collins, J., joined by Forrest, J., dissenting from denial of rehearing en banc). But even those judges

15

agreed that "the district court abused its discretion in dismissing the indictment with prejudice rather than without prejudice." *Id.* at 1081. A third judge concurred but reasoned that "this case would be *much different* if Olsen had been incarcerated" pending trial. *Id.* at 1058 (Bumatay, J., concurring in denial of rehearing en banc).

The Ninth Circuit judges on the panel filed a concurrence in the denial of rehearing. *Id.* at 1049-57 (Murguia, C.J., joined by Christen, J., concurring in denial of rehearing en banc). They responded to the dissental in detail and stood "firmly behind [their] opinion." *Id.* at 1050. Relevant here, they also stated that they "did not predict or foreclose further Speedy Trial Act motions practice in this case." *Id.* at 1049; *see also id.* at 1052 ("We did not reach this conclusion lightly, nor did we foreclose future motions practice on Speedy Trial Act grounds.").

The Supreme Court denied defendant's petition for a writ of certiorari in May 2022. *Olsen v. United States*, 142 S. Ct. 2716 (2022).

### 7. *The district court again dismisses the indictment with prejudice*

In June 2022, the district court held a status conference to discuss how to move forward. (3-ER-435–58.) At the outset, the district judge read the concurral's statement that "[w]e did not predict or foreclose

16

further Speedy Trial Act motions practice in this case." (3-ER-437–38.)
The judge then asked defense counsel if she was "going to request that I
reconsider the motion to dismiss under the new standard that the *Olsen*
panel found?" (3-ER-438.) Defense counsel responded that she was
planning to submit supplemental briefing on that issue. (*Id.*)

The government objected that no further briefing was needed
because "the mandate of the Ninth Circuit is unambiguous." (3-ER-
440.) The district judge, however, disagreed and set a briefing schedule
for a renewed motion to dismiss. (3-ER-453–56.) Notably, the district
judge not only suggested that he still had the authority to reconsider
defendant's motion to dismiss but also criticized this Court's opinion as
"insulting" and "hostile." (3-ER-448; *see also* 3-ER-446 (referring to the
opinion as "not fair"); *id.* (asking "why the Government stood silent
when I was being accused of I'm going to do something unsafe"); 3-ER-
453 (suggesting that the opinion was based upon "falsehoods").)

A few weeks later, defendant filed a renewed motion to dismiss
the indictment on speedy trial grounds. (3-ER-190–434.) Defendant
claimed that the district court "had the ability to safely conduct a trial
in October 2020," and supported that claim with a long summary of how

other courts in Southern California responded to the COVID-19 pandemic. (3-ER-248–95.)

The government opposed. (2-ER-154–88.) It reiterated that dismissing the case again would violate this Court's mandate. (2-ER-164–71.) It also explained that, in any event, the relevant factors weighed in favor of a continuance: defendant was released on bond, delayed his case for over three years before invoking his speedy trial rights, and was charged with very serious crimes. (2-ER-171–75.) Moreover, the government pointed out that "[d]efendant's argument that the Court could have conducted a safe trial was rejected in *Olsen*." (2-ER-175.) And "even assuming, for purposes of argument, that the Court could have conducted a safe enough trial in October 2020, this [wa]s at most one factor in defendant's favor." (*Id.*) At minimum, any dismissal should be without prejudice. (2-ER-175–79.)

In August 2022, the district court held another motion hearing. (2-ER-65–106.) To begin, the district judge asked defense counsel for her "best arguments" as to why there was a violation of the Speedy Trial Act. (2-ER-68.) Counsel responded that other courts in Southern California held trials during the Central District's jury trial suspension,

which showed that "not only was it possible . . . it was safe." (*Id.*) The judge then engaged in a lengthy discussion with defense counsel about the government's lack of culpability for the delay. (2-ER-71–82.) Both defense counsel and the court "agree[d] that the Government didn't do anything wrong in that it was not their decision to suspend jury trials for 14 months." (2-ER-72.) However, the judge "personally" believed that "you could make an argument when it's the judges who are doing it, it's worse than when the Government is doing it." (2-ER-73.) This belief apparently weighed against dismissing the indictment without prejudice. "How is that sending a message to the judges?" (2-ER-76.)

The government argued primarily that the district court was bound by this Court's mandate. (2-ER-94–101.) The district judge had "three responses to that." (2-ER-94.) First, the *Olsen* concurral said that the panel opinion did not preclude future Speedy Trial Act litigation. (*Id.*) Second, "it's well established that if there is a new legal standard announced and a judge . . . clearly errs by not applying the correct legal standard, you need to send it back to the District Court for remand to apply the new legal standard." (2-ER-94–95.) "But most importantly and candidly, from where I'm sitting," the judge went on,

19

"the premise of the Ninth Circuit's opinion was wrong."  (2-ER-95.)

According to the judge, this Court thought it was "unsafe" to conduct a

jury trial, but he had made an "implicit" finding that it was safe to

proceed.  (*Id.*)  The judge later clarified that "[i]t doesn't matter because

we have the Sixth Amendment, and that's an absolute right.  And you

need to conduct a trial even if you have bodies falling down and dying.

You know, it's a little insulting, candidly, but again, put my ego out of

it, that's not what I held.  I thought it was safe."  (2-ER-99.)

Later that same day, the district court issued a 62-page order

granting defendant's motion to yet again dismiss the indictment with

prejudice.  (1-ER-2–63.)  *See United States v. Olsen*, --- F. Supp. 3d ----,

2022 WL 4493853 (C.D. Cal. Aug. 22, 2022).

As a threshold matter, the district court concluded that this

Court's mandate did not prevent it from reconsidering the motion to

dismiss.  (1-ER-14–17.)  The court cited several reasons, including the

concurral's statements; the general principle that district courts should

apply a new legal standard in the first instance; and a new claim that

"[g]ranting an 'appropriate' ends of justice continuance . . . necessarily

involves a determination of whether a continuance is appropriate to

grant in the first place." (1-ER-15–16.) But "most importantly," this Court had purportedly "misconstrued" its prior order. (1-ER-16.) Specifically, "the Ninth Circuit's opinion rested upon the [incorrect] premise that this Court found conducting jury trials at the time Mr. Olsen wished to go to trial would have been unsafe." (*Id.*)

Reprising its analysis from the first dismissal order, the district court then concluded that General Order 20-09 violated the Speedy Trial Act. (1-ER-17–31.) The court explained that this order was both legally and factually deficient for several "glaring" reasons. (1-ER-18.) Most "troubling," state courts in Southern California had resumed jury trials before the Central District. (1-ER-23–25.) And the court claimed that—despite this Court's contrary conclusion—it had the ability to safely conduct jury trials in October 2020. (1-ER-27–31.)

Turning to the other "*Olsen* factors," the district court again concluded that allowing defendant to "walk free" would not result in a miscarriage of justice. (1-ER-31–33.) Although he was accused of very serious crimes, was granted pretrial bond, obtained eight continuances (including one over the government's objection), and the government was blameless for the delay, these factors were irrelevant because

defendant was presumed "innocent until proven otherwise." (1-ER-32.) And the balance of the remaining *Olsen* factors weighed in favor of defendant. (1-ER-33–37.) Thus, the court concluded that the delay in holding defendant's trial violated the Speedy Trial Act. (1-ER-37.)[4]

Once again, the district court concluded that the appropriate remedy was dismissal with prejudice. (1-ER-37–43.) In a footnote, the court asserted that there was no need to further discuss the facts of defendant's case. (1-ER-38 n.20.) It then spent five pages criticizing the Central District for suspending jury trials. (1-ER-38–43.) Given the "gravity of the Central District's conduct," the court concluded that "accountability" was needed. (1-ER-41.) "Reprosecuting Mr. Olsen would do nothing to promote the administration of justice. Dismissing the indictment against him with prejudice, however, will deter the Central District from thwarting it ever again." (1-ER-43.) Accordingly, the district court again dismissed with prejudice. (1-ER-44–45.)

---

[4] As in its first dismissal order (4-ER-480 n.12), the district court expressly declined to "conduct a separate analysis" of defendant's Sixth Amendment claim (1-ER-17 n.7). This Court previously held that this means "the basis for the district court's dismissal order was statutory only." 21 F.4th at 1045 n.8.

# IV

# SUMMARY OF ARGUMENT

The district court's latest dismissal order was wrong both procedurally and substantively.

*First*, the district court violated the rule of the mandate. A district court must follow "both the spirit and express instructions of [this Court's] mandate." *United States v. Paul*, 561 F.3d 970, 973 (9th Cir. 2009) (per curiam). The district court instead defied both. This Court's simple directive required the district court "**to reinstate Olsen's indictment, grant an appropriate ends of justice continuance, and set this case for a trial.**" 21 F.4th at 1049. The district court flouted these instructions. There is no sense in which an order requiring a judge to reinstate an indictment, grant an appropriate continuance, and set a trial date permits the judge to dismiss the indictment yet again.

*Second*, the district court abused its discretion by dismissing the indictment with prejudice. Indeed, the court made the same errors that required reversal of its first dismissal order. In analyzing whether there was a Speedy Trial Act violation, the district court concluded that

23

its failure to grant a continuance and dismissal of the indictment would not result in a miscarriage of justice, even though this Court previously had "no difficulty" in reaching the opposite conclusion. 21 F.4th at 1046. And in analyzing whether to dismiss with or without prejudice, the judge again dismissed with prejudice based on his personal disagreement with General Order 20-09, even though this Court previously admonished him for "focus[ing] only on the Central District's suspension of criminal jury trials and his disagreement with his colleagues' decision to vote in favor of suspension." 21 F.4th at 1048.

*Finally*, this case should be reassigned to another district judge on remand. While reassignment is reserved for "unusual circumstances," *United States v. Wolf Child*, 699 F.3d 1082, 1102 (9th Cir. 2012), all three of the relevant factors support reassignment here: (1) the record demonstrates that the district judge will have difficulty putting out of mind his previously expressed views regarding the Central District's jury trial suspension; (2) reassignment would preserve the appearance of justice because the district judge has become too personally invested in the outcome of this case; and (3) reassignment would not entail any waste because there have been minimal pretrial proceedings.

24

# V

# ARGUMENT

## A.  The District Court Violated the Rule of the Mandate

### 1.  *Standard of review*

This Court reviews de novo a district court's compliance with the

mandate.  *United States v. Kellington*, 217 F.3d 1084, 1092 (9th Cir.

2000).

### 2.  *The district court did not follow this Court's express instructions to set this case for trial*

The district court's dismissal order should be reversed because it

violated this Court's mandate.  "The rule of mandate requires a lower

court to act on the mandate of an appellate court, without variance or

examination, only execution."  *United States v. Garcia-Beltran*, 443 F.3d

1126, 1130 (9th Cir. 2006).  A district court must follow "both the spirit

and express instructions" of the mandate.  *Paul*, 561 F.3d at 973.  This

important rule "serves an interest in preserving the hierarchical

structure of the court system."  *United States v. Thrasher*, 483 F.3d 977,

982 (9th Cir. 2007).

In this case, the district court followed neither the spirit nor the

express instructions of the mandate.  After reversing the first dismissal

order, this Court "**REMANDED with instructions to reinstate Olsen's indictment, grant an appropriate ends of justice continuance, and set this case for a trial.**" 21 F.4th at 1049. The district court plainly did not follow these instructions—instead, it again dismissed the indictment with prejudice. None of the judge's contrary explanations is persuasive. (1-ER-14–17.)

*First*, the district court believed that it had discretion to dismiss the indictment because "[g]ranting an 'appropriate' ends of justice continuance . . . necessarily involves a determination of whether a continuance is appropriate to grant in the first place." (1-ER-15.) But that reasoning cannot be squared with this Court's instructions to "**set this case for a trial.**" 21 F.4th at 1049. Nor can it be squared with the plain meaning of "grant." A directive to "grant," by definition, does not include the discretion to "deny"—particularly where a denial would thwart the other portion of the mandate instructing the court to set this case for trial. What's more, the latest dismissal order also contravenes the spirit, if not the plain text, of this Court's first directive to reinstate the indictment. This Court clearly did not intend for the district court to reinstate the indictment for the sole purpose of dismissing it again.

*See United States v. Sears, Roebuck & Co.*, 785 F.2d 777, 781 (9th Cir. 1986) (per curiam) (explaining that this Court summarily reversed because the district court "dismissed [the] indictment a second time" despite "this court directing reinstatement of the indictment").

*Second*, the district court improperly relied on the concurral's statement that "further Speedy Trial Act motions were not foreclosed" in this case. (1-ER-15.) As an initial matter, it is a basic tenet that "an opinion concurring in the denial of rehearing en banc is not binding." *Shepherd v. Unknown Party*, 5 F.4th 1075, 1077 (9th Cir. 2022) (per curiam). But regardless, the concurral is best read as preserving defendant's right to object to new, *additional* delays in his case—not inviting reconsideration of the very dispute that the panel just resolved. Indeed, that is the only interpretation that harmonizes the concurral with this Court's instruction to set the case for trial.

The district court relatedly cited "the general principle that when reversed for clear error district courts are to apply the correct legal standard." (1-ER-15–16.) That principle purportedly supported its decision because this Court did not apply the newly announced *Olsen* factors to defendant's case. *See* 21 F.4th at 1046 (identifying seven

"non-statutory factors" that are relevant "in the context of the COVID-19 pandemic"). This Court, however, broadly credited the reasoning in General Order 20-09 regarding "the continued public health and safety issues posed by COVID-19" and the risks of trials to "prospective jurors, defendants, attorneys, and court personnel." *Id.* at 1049. And again, this Court ordered the district court to grant "an appropriate ends of justice continuance" of some length—not no length at all. *Id.* (emphasis omitted). That directive reflected the panel's understanding that this case was an easy one because the relevant factors supported only one outcome: an ends of justice continuance. In reaching that conclusion, the panel necessarily applied the *Olsen* factors itself.

The dissental adopted this same interpretation. As it highlighted, "the panel conspicuously did not remand for the district court to apply [the *Olsen*] factors; instead, it remanded with explicit instructions to 'grant' an appropriate continuance and set a new trial date. The panel thus must be understood to have applied these factors itself." 21 F.4th at 1077 (citation omitted). The concurral did not dispute that point. Even assuming otherwise, no "general principle" of law could overcome the mandate's express terms. *See Paul*, 561 F.3d at 973.

28

*Finally*, "and most importantly," the district court believed that the mandate was not binding because this Court's opinion "rested upon the [incorrect] premise that [the district court] found conducting jury trials at the time Mr. Olsen wished to go to trial would have been unsafe." (1-ER-16.) That is wrong. This Court acknowledged the district court's comments about safety in the first dismissal order, but concluded that "just because state courts are holding jury trials does not mean that they are necessarily holding them safely." 21 F.4th at 1047 n.10. It further found "[n]othing in the record indicat[ing] that the Central District was able to hold a jury trial safely in October 2020, when Olsen's case was set for trial." *Id.* And the Ninth Circuit judges on the panel later repeated those same points in the concurral. *Id.* at 1054 n.3 ("It is far from clear that Orange County [state courts] conducted operations safely. The Los Angeles Times has since reported that four interpreters from the Los Angeles County courthouse died from COVID-19."). Therefore, this Court did not misconstrue the district court's comments about safety—it just disagreed with them.

In any event, the district judge's belief that this Court misunderstood his first dismissal order was no basis to defy the

mandate. "A district judge may not respectfully (or disrespectfully) disagree with his learned colleagues on his own court of appeals who have ruled on a controlling legal issue." *Hart v. Massanari*, 266 F.3d 1155, 1170 (9th Cir. 2001). The higher court's decision "is considered as finally settled" and "beyond the jurisdiction of the lower court." *United States v. Perez*, 475 F.3d 1110, 1113 & n.2 (9th Cir. 2007) (cleaned up). Thus, a district court cannot "examine" this Court's approach "or review it, even for apparent error." *In re Sanford Fork & Tool Co.*, 160 U.S. 247, 255 (1895); *accord Kellington*, 217 F.3d at 1093. Because the district court broke those rules, its decision must be reversed.

## B. The District Court Abused Its Discretion By Again Dismissing the Indictment with Prejudice

### 1. *Standard of review*

This Court reviews de novo a district court's decision to dismiss the indictment under the Speedy Trial Act. *Olsen*, 21 F.4th at 1040. Any underlying findings of fact are reviewed for clear error, as is a district court's ends of justice determination. *Id.*

### 2. *The district court relied upon the same analysis that was rejected by this Court in the first appeal*

The district court's dismissal order also should be reserved because it is wrong on the merits. Despite having this Court's

30

"guidance on the application of the Speedy Trial Act's ends of justice provision, 18 U.S.C. § 3161(h)(7)(A), in the context of the challenges presented by the COVID-19 pandemic," 21 F.4th at 1044, the district court made the same errors that required reversal of its initial dismissal order.

### a. *The district court erred by finding a violation of the Speedy Trial Act*

The district court first erred by finding a violation of the Speedy Trial Act. In analyzing whether to grant an ends of justice continuance, the Speedy Trial Act requires district courts to consider, among other factors, whether failure to grant a continuance "would . . . result in a miscarriage of justice." 18 U.S.C. § 3161(h)(7)(B)(i). This Court previously had "no difficulty in concluding that the district court's failure to grant the government's motion and subsequent dismissal of Olsen's indictment, under the unique facts of Olsen's case and the Central District's suspension of jury trials, resulted in a miscarriage of justice." 21 F.4th at 1046. The district court's contrary finding was "simply not convincing." *Id.* Rather, this Court found it "troubling" that the district court failed to even mention several "important facts in its dismissal order—especially the years of continuances while Olsen

31

was on pre-trial release and the absence of any government culpability or minimal prejudice to Olsen." *Id.*

Nevertheless, the district court concluded on remand that "[t]he government's argument that the failure to grant a continuance in this case will result in a miscarriage of justice is not persuasive." (1-ER-32.) Although defendant was accused of very serious crimes, was granted pretrial bond, obtained eight continuances (including one over the government's objection), and the government was blameless for the delay, the court decided that these factors were irrelevant because "Mr. Olsen in the eyes of the law is innocent until proven otherwise." (*Id.*) In fact, the court found it "troubling" that the government was relying upon defendant's failure to assert his speedy trial rights because "[i]t implies that if a defendant does not invoke his right to a speedy trial immediately and consistently, he waives his rights under the Speedy Trial Act and the Sixth Amendment." (1-ER-34.)

That analysis contravened this Court's prior holding that "the district court's failure to grant the government's motion and subsequent dismissal of Olsen's indictment . . . resulted in a miscarriage of justice." 21 F.4th at 1046. And while this is just one of several factors that must

be considered under the Speedy Trial Act, this Court strongly suggested that this factor *alone* required the district court to grant an ends of justice continuance. *See id.* ("We find the miscarriage-of-justice provision particularly salient in Olsen's case."). The concurral reiterated this same point. *Id.* at 1050 ("In Olsen's case, the most relevant factor was: 'Whether the failure to grant such a continuance in the proceeding would be likely to make a continuance of such proceeding impossible, or result in a miscarriage of justice.'"). Indeed, the district judge himself recognized that "the Ninth Circuit [was] loud and clear about some of the factors and facts and circumstances of this case that they think made it a no-brainer that I should have granted the continuance" (3-ER-444)—but he still ignored this Court's guidance.

The district court's speedy trial analysis was also deficient in several other ways. The court again cataloged its disagreements with General Order 20-09, criticizing this order as factually unsound and legally invalid. (1-ER-17–31.) This Court, in contrast, previously explained that "unprecedented public health and safety concerns" prompted this order and the Central District's "decision to pause jury trials and exclude time under the Speedy Trial Act was not made

lightly."  21 F.4th at 1049; *see also id.* at 1047 ("But surely a global pandemic that has claimed more than half a million lives in this country, and nearly 60,000 in California alone, falls within such unique circumstances to permit a court to temporarily suspend jury trials in the interest of public health.").  The district court also highlighted that state courts resumed jury trials sooner than the Central District.  (1-ER-23–25.)  But this Court previously rejected the relevance of this point, noting a dearth of record information on whether state courts had adopted sufficient safety protocols.  *See* 21 F.4th at 1047 n.10.  And the district court repeatedly cited the government's "concession" that it was safe to hold jury trials in October 2020 (1-ER-27 & n.12, 36, 40)—even though the government never made such a concession.[5]

Based on these multiple errors, the district court again reached the wrong conclusion under the Speedy Trial Act.  A continuance should have been granted, and the indictment should not have been dismissed.

---

[5]  The government said the following in its opposition to defendant's renewed motion to dismiss: "But even assuming, for purposes of argument, that the Court could have conducted a safe enough trial in October 2020, this is at most one factor in defendant's favor."  (2-ER-175.)  The court's order omits the "even assuming, for purposes of argument" part of this sentence.

### b. *The district court erred by dismissing the indictment with prejudice*

The district court also separately erred by dismissing the indictment with prejudice. In reviewing the first dismissal order, this Court explained that the district court erred by failing "to adequately consider all the relevant factors as applied to Olsen's case" and instead "focus[ing] only on the Central District's suspension of criminal jury trials and his disagreement with his colleagues' decision to vote in favor of suspension." 21 F.4th at 1048. "The district court therefore committed legal error in failing to consider key factors relevant to Olsen's case: the absence of prosecutorial culpability and the multiple continuances requested by Olsen." *Id.* Even the dissental agreed that "the district court abused its discretion in dismissing the indictment with prejudice rather than without prejudice." *Id.* at 1081; *see also In re Approval of Jud. Emergency*, 955 F.3d at 1142-43 ("Congress did not intend that a district court demonstrate its inability to comply with the STA by dismissing criminal cases and releasing would-be convicted criminals into society.").

The district court, however, relied upon the same erroneous reasoning on remand. The second dismissal order brushed aside "the

seriousness of the charges" in a footnote.  (1-ER-38 n.20.)  The judge

then spent five pages discussing why he disagreed with his colleagues'

decision to suspend jury trials.  (1-ER-39–43.)  And he concluded that

dismissal with prejudice was required to "deter the Central District

from thwarting [the administration of justice] ever again."  (1-ER-43.)

That analysis was plainly wrong.  Indeed, the court's reasoning

was even more deficient than its first dismissal order because the *only*

factor that the court discussed was its disagreement with the Central

District's response to the COVID-19 pandemic.  The district court

therefore again "committed legal error in failing to consider key factors

relevant to Olsen's case." 21 F.4th at 1048.  Accordingly, the district

court's dismissal order also must be reversed because there was no

basis to dismiss with prejudice, rather than (at most) without.

## C.   This Case Should Be Reassigned to Another District Judge

This Court should take the additional step of reassigning this case

to another district judge on remand.  The government acknowledges

that reassignment is appropriate "only in unusual circumstances or

when required to preserve the interests of justice." *Wolf Child*, 699

F.3d at 1102.  But given the unusual circumstances of this case, it is

necessary here.

In analyzing whether reassignment is appropriate, this Court considers three factors:

> (1) whether the original judge would reasonably be expected upon remand to have substantial difficulty in putting out of his or her mind previously expressed views or findings determined to be erroneous or based on evidence that must be rejected,

> (2) whether reassignment is advisable to preserve the appearance of justice, and

> (3) whether reassignment would entail waste and duplication out of proportion to any gain in preserving appearance of fairness.

*Wolf Child*, 699 F.3d at 1102. "The first two of these factors are of equal importance, and a finding of one of them would support a remand to a different judge." *United States v. Rivera*, 682 F.3d 1223, 1237 (9th Cir. 2012) (quotation marks omitted). And this Court "need not find actual bias on the part of the district court prior to reassignment." *United States v. Wells*, 879 F.3d 900, 938 (9th Cir. 2018).

In this case, all three factors favor reassignment.

First, the record demonstrates that the district judge will have difficulty putting out of mind his previously expressed views regarding the Central District's jury trial suspension. On remand, the judge was

sharply critical of both his colleagues on the Central District and this Court. Indeed, he referred to this Court's opinion as "insulting" and "hostile." (2-ER-99; 3-ER-448.) And he also expressed his strong belief that this Court's opinion was simply "wrong." (2-ER-95.) The judge's decision to ignore this Court's mandate shows that he cannot put these views out of mind. *See Paul*, 561 F.3d 975 (ordering reassignment because the district judge ignored the mandate). As the concurral highlighted, "[t]he record makes clear that the district court ha[s] made up its mind" about the central issues in this case. 21 F.4th at 1054 n.3. The proceedings on remand confirmed exactly that. *See Sears*, 785 F.2d at 781 (reassigning case because the district judge repeatedly dismissed the indictment, despite this Court's contrary instructions "directing reinstatement of the indictment").

Second, reassignment would preserve the appearance of justice. The record indicates that the district judge has become too personally invested in the outcome of this case. Beyond his strong views on the merits, the judge has improperly engaged in his own investigation of the facts. After this Court reversed, the judge visited the grand jury rooms at his courthouse, determined their dimensions, and then took

photos (*see* 3-ER-445)—which he attached to the new dismissal order (1-ER-60–63).  Moreover, the judge also attached a photo of himself sitting in his courtroom's witness box.  (1-ER-54–55.)  These actions further establish that reassignment is appropriate because "the judge's feelings . . . are both well-established and inappropriately strong."  *Nat'l Council of La Raza v. Cegavske*, 800 F.3d 1032, 1046 (9th Cir. 2015).[6]

Finally, reassignment would not result in any waste or duplication of efforts.  Other than the litigation of the speedy trial motions, there have been minimal pretrial proceedings in this case.  *See United States v. Yamashiro*, 788 F.3d 1231, 1238 (9th Cir. 2015) (concluding that this factor did not weigh against reassignment where the "case did not go to trial").  And reassignment may prevent further waste by ensuring that the district court complies with this Court's mandate—rather than forcing a third appeal.

---

[6] The judge's actions also suggest that recusal might be required under 28 U.S.C. § 455.  This Court, among others, has held that judges should not rely upon facts gleaned from personal investigation or experience to decide cases, especially where the factfinding mission occurred outside the presence of the parties.  *See United States v. Lewis*, 833 F.2d 1380, 1386 (9th Cir. 1987); *see also Small v. Hunt*, 98 F.3d 789, 798-99 (4th Cir. 1996); *Price Bros. Co. v. Phila. Gear Corp.*, 629 F.2d 444, 447 (6th Cir. 1980).

Accordingly, reassignment is warranted in light of the unusual circumstances presented in this case.

## VI

## CONCLUSION

This Court should reverse the order dismissing the indictment, remand with instructions to set this case for a trial, and reassign this case to another district judge.

DATED: February 21, 2023      Respectfully submitted,

E. MARTIN ESTRADA
United States Attorney

MACK E. JENKINS
Assistant United States Attorney
Chief, Criminal Division

BRAM M. ALDEN
Assistant United States Attorney
Chief, Criminal Appeals Section

*s/ David R. Friedman*

DAVID R. FRIEDMAN
Assistant United States Attorney
Criminal Appeals Section

Attorneys for Plaintiff-Appellant
UNITED STATES OF AMERICA

## STATEMENT OF RELATED CASES

The government states, pursuant to Ninth Circuit Rule 28-2.6, that this case is related to the following appeals:

- *United States v. Henning*, C.A. No. 21-50027;

- *United States v. Nicholson*, C.A. No. 21-50028;

- *United States v. Ware*, C.A. No. 21-50029; and

- *United States v. Torres*, C.A. No. 21-50285.

All of these appeals concern the proper interpretation of this Court's decision in *United States v. Olsen*, 21 F.4th 1036 (9th Cir. 2022) (per curiam). That decision was issued during a prior appeal in this case: *United States v. Olsen*, C.A. No. 20-50329.

# CERTIFICATE OF COMPLIANCE

I certify that:

1.     This brief complies with the length limits permitted by Ninth Circuit Rule 32-1 because the brief contains 7,639 words, including words manually counted in any visual images and excluding the portions exempted by Fed. R. App. P. 32(f).

2.     This brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type-style requirements of Fed. R. App. P. 32(a)(6) because it has been prepared in a proportionally spaced typeface (14-point Century Schoolbook) using Microsoft Word 2016.

DATED: February 21, 2023                    *s/ David R. Friedman*

DAVID R. FRIEDMAN
Attorney for Plaintiff-Appellant
UNITED STATES OF AMERICA