No. 22-50185

# IN THE UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

UNITED STATES OF AMERICA,
*Plaintiff-Appellant*,

*v.*

JEFFREY OLSEN,
*Defendant-Appellee.*

*APPEAL FROM THE UNITED STATES DISTRICT COURT*
*FOR THE CENTRAL DISTRICT OF CALIFORNIA*
*DISTRICT COURT NO. CR 17-76-CJC*

## GOVERNMENT'S REPLY BRIEF

E. MARTIN ESTRADA
United States Attorney

BRAM M. ALDEN
Assistant United States Attorney
Chief, Criminal Appeals Section

DAVID R. FRIEDMAN
Assistant United States Attorney
Criminal Appeals Section

1000 United States Courthouse
312 North Spring Street
Los Angeles, CA 90012
Telephone: (213) 894-7418
Email: David.Friedman@usdoj.gov

Attorneys for Plaintiff-Appellant
UNITED STATES OF AMERICA

# TABLE OF CONTENTS

**DESCRIPTION**                                                         **PAGE**

I.     INTRODUCTION ................................................................ 1

II.    ARGUMENT ...................................................................... 3

      A.    The District Court Did Not Comply with the Mandate ........ 3

      B.    Even if the Mandate Rule Does Not Apply, the District Court's Dismissal Order Must Be Reversed ........................... 9

            1.    The district court erred by finding a violation of the Speedy Trial Act ........................................................ 9

            2.    The district court erred by dismissing the indictment with prejudice ........................................... 15

      C.    This Court Should Not Remand for Further Consideration of Defendant's Sixth Amendment Claim ...... 19

      D.    Reassignment Is Appropriate ............................................... 21

III.   CONCLUSION ................................................................. 25

# TABLE OF AUTHORITIES

**DESCRIPTION**                                         **PAGE(S)**

**Federal Cases**

*Colville Confederated Tribes v. Walton*,
   752 F.2d 397 (9th Cir. 1985) ............................................................ 6

*Hart v. Massanari*,
   266 F.3d 1155 (9th Cir. 2001) ..................................................... 8, 14

*Nat'l Council of La Raza v. Cegavske*,
   800 F.3d 1032 (9th Cir. 2015) ......................................................... 22

*Nguyen v. United States*,
   792 F.2d 1500 (9th Cir. 1986) ........................................................... 5

*Price Bros. Co. v. Phila. Gear Corp.*,
   629 F.2d 444 (6th Cir. 1980) ........................................................... 23

*United States v. Agli*,
   2023 WL 2387580 (9th Cir. 2023) (unpublished) ............................. 20

*United States v. Atondo-Santos*,
   385 F.3d 1199 (9th Cir. 2004) ......................................................... 24

*United States v. Battle*,
   2023 WL 2158807 (9th Cir. 2023) (unpublished) ............................. 20

*United States v. Jones*,
   2023 WL 4288349 (9th Cir. 2023) (unpublished) ............................. 20

*United States v. Lewis*,
   833 F.2d 1380 (9th Cir. 1987) ......................................................... 22

*United States v. Montgomery*,
   462 F.3d 1067 (9th Cir. 2006) ........................................................... 4

*United States v. Olsen*,
   21 F.4th 1036 (9th Cir. 2022) (per curiam) ................................ passim

# TABLE OF AUTHORITIES (continued)

**DESCRIPTION**                                                    **PAGE(S)**

*United States v. Orozco-Barron,*
   --- F.4th ----, 2023 WL 4317079 (9th Cir. 2023) ......................... passim

*United States v. Paul,*
   561 F.3d 970 (9th Cir. 2009) (per curiam)...........................................24

*United States v. Sears, Roebuck & Co.,*
   785 F.2d 777 (9th Cir. 1986) (per curiam)..........................................24

*United States v. Thrasher,*
   483 F.3d 977 (9th Cir. 2007).................................................................4

*United States v. Torres,*
   2023 WL 4077347 (9th Cir. 2023) (unpublished).........................20, 21

*United States v. Walker,*
   68 F.4th 1227 (9th Cir. 2023) ..........................................................20

*United States v. Williams,*
   782 F.2d 1462 (9th Cir. 1985)...........................................................12

*United States v. Wolf Child,*
   699 F.3d 1082 (9th Cir. 2012)...........................................................21

**Federal Statutes**

18 U.S.C. § 3161(h)(7)(B)(i) ....................................................................14

18 U.S.C. § 3162(a)(2)..................................................................16, 17, 18

No. 22-50185

# IN THE UNITED STATES COURT OF APPEALS FOR THE NINTH CIRCUIT

UNITED STATES OF AMERICA,
*Plaintiff-Appellant*,

*v.*

JEFFREY OLSEN,
*Defendant-Appellee.*

*APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE CENTRAL DISTRICT OF CALIFORNIA
DISTRICT COURT NO. CR 17-76-CJC*

## GOVERNMENT'S REPLY BRIEF

# I

# INTRODUCTION

After reversing the first dismissal order, this Court remanded with simple instructions in bold lettering: "**reinstate Olsen's indictment, grant an appropriate ends of justice continuance, and set this case for a trial**." *United States v. Olsen*, 21 F.4th 1036, 1049 (9th Cir. 2022) (per curiam) (hereinafter "*Olsen I*"). The district

court did not follow that directive. Instead, it defied this Court's mandate and again dismissed the indictment with prejudice.

Defendant attempts to defend this decision, but his arguments ignore the plain language of the mandate and this Court's binding precedent. An order requiring a judge to reinstate an indictment, grant a continuance, and set a trial date cannot be read as permitting the judge to dismiss the indictment. And this Court squarely rejected his narrow view of *Olsen I* in *United States v. Orozco-Barron*, --- F.4th ----, 2023 WL 4317079 (9th Cir. 2023). As explained in that decision, "*Olsen* concluded that the government was entitled to an ends of justice continuance" because "the Central District's emergency general orders were a sufficient basis 'to pause jury trials and exclude time under the Speedy Trial Act.'" *Id.* at *4 (quoting *Olsen I*, 21 F.4th at 1049).

That holding requires reversal here. Because the government was entitled to a continuance, the district court necessarily erred by not granting one and instead dismissing the indictment with prejudice a second time. Accordingly, this Court should again reverse and remand with instructions to set this case for trial. It should also order reassignment to ensure that, this time, its directive is followed.

# II

# ARGUMENT

The district court's second dismissal order should be reversed for two independent reasons: (1) it violated the rule of the mandate; and (2) its reasoning is squarely inconsistent with this Court's precedent. (GOB 25-36.)[1]  And given the unique circumstances, this case should be reassigned to another district judge on remand.  (GOB 36-40.)

## A.    The District Court Did Not Comply with the Mandate

The most straightforward reason that the dismissal order should be reversed is that it violates the rule of the mandate.  After the district court issued its first dismissal order, this Court reversed and remanded "with instructions to reinstate Olsen's indictment, grant an appropriate ends of justice continuance, and set this case for a trial." *Olsen I*, 21 F.4th at 1049 (emphasis omitted).  The district court, however, ignored those clear instructions and instead dismissed the indictment once again.  The court's refusal to comply with the mandate requires

---

[1]  "ER" refers to the Excerpts of Record filed by the government, "GOB" refers to the Government's Opening Brief, "DAB" refers to Defendant's Answering Brief, and "SER" refers to the Supplemental Excerpts of Record filed by defendant.

3

reversal. *See United States v. Montgomery*, 462 F.3d 1067, 1072 (9th Cir. 2006) ("Failure to follow this court's instructions on remand is grounds for the case to be re-remanded for compliance with our instructions.").

Defendant responds that the government's interpretation of the mandate is "hyper-technical" (DAB 43), but it is defendant, not the government, who distorts plain English. This Court instructed the district court to do three things: reinstate the indictment, grant an appropriate continuance, and set this case for trial. The district court did none of them. Defendant claims that this defiance was acceptable because "'grant[ing] an appropriate ends of justice continuance' 'necessarily involves a determination of whether a continuance is appropriate to grant in the first place.'" (DAB 43 (quoting 1-ER-15).) But a district court must implement the "plain language" of the mandate. *United States v. Thrasher*, 483 F.3d 977, 983 (9th Cir. 2007). The plain meaning of "grant" a continuance is not deny a continuance.

That is particularly true if, as defendant urges, the words are not viewed "in a vacuum." (DAB 43.) This Court ordered an "appropriate" continuance only after the *government* proposed that relief. *See* Gov't

4

Reply Brief, *Olsen I*, 2021 WL 780357, at \*39 (requesting that this Court direct the district court to "reinstate the indictment with an appropriate STA continuance"). Moreover, that order was coupled with instructions to "**reinstate Olsen's indictment**" and "**set this case for a trial**." *Olsen I*, 21 F.4th at 1049. Putting aside the meaning of "appropriate," the district court plainly did not follow this Court's instructions to reinstate the indictment and set this case for trial. *See Nguyen v. United States*, 792 F.2d 1500, 1501-03 (9th Cir. 1986) (holding that the district court violated the mandate by not entering summary judgment for the government because this Court "reversed and remanded for entry of summary judgment in favor of the government" (alterations adopted)). That was error.

Defendant also claims that the concurral's statement that "[w]e did not predict or foreclose further Speedy Trial Act motions practice in this case" allowed the district court to ignore the plain language of the mandate. (DAB 46.) This statement in the non-binding concurral, however, is best read as preserving defendant's right to object to *new* delays in his case—not to the delay that this Court had just held was acceptable. And while the concurral responded to much of the "dissent's

5

criticism" (DAB 46), it did not contest the dissent's claim that "the panel conspicuously did not remand for the district court to apply [the *Olsen*] factors" because it "applied these factors itself," 21 F.4th at 1077. In other words, it did not dispute that *Olsen I* itself applied the relevant test under the Speedy Trial Act and concluded that the government was entitled to a continuance.

That interpretation of *Olsen I* does not, as defendant claims, "disregard the prohibitions on appellate factfinding and applying a legal standard in the first instance." (DAB 46.) To begin, "[t]he district court was obligated to carry out the mandate of [*Olsen I*], whether correct or in error." *Colville Confederated Tribes v. Walton*, 752 F.2d 397, 404 (9th Cir. 1985) (quotation marks omitted). Consequently, the district court had to comply with the mandate, even if it thought that this Court's instructions violated some general principle of law.

Regardless, defendant is wrong that *Olsen I* was a narrow decision that only addressed the proper interpretation of the Speedy Trial Act—and "went no further." (DAB 44.) While defendant insists that *Olsen I* never addressed the validity of General Order 20-09 or whether the government was entitled to a continuance (DAB 45), this Court has

squarely rejected that claim. In *United States v. Orozco-Barron*, this Court clarified that *Olsen I* did, in fact, hold that "the government was *entitled* to an ends of justice continuance." 2023 WL 4317079, at *4 (emphasis added). That was because "the Central District's emergency general orders were a sufficient basis 'to pause jury trials and exclude time under the Speedy Trial Act.'" *Id.* (quoting *Olsen I*, 21 F.4th at 1049). In other words, "*Olsen* indicated that the findings in the chief judge orders . . . were adequate 'to pause jury trials and exclude time under the Speedy Trial Act,' even though they did not address the non-statutory factors listed in that opinion." *Id.* at *10 (citation omitted) (quoting *Olsen I*, 21 F.4th at 1049).

As defendant notes (DAB 46-47), Judge Christen took a narrower view of *Olsen I*, but she was in dissent on this point. The majority rejected the claim that "'the question presented in *Olsen*' was whether the district court erred in its statutory interpretation of the Speedy Trial Act, and *Olsen* did not address 'the general orders that suspended jury trials after the pandemic broke out.'" 2023 WL 4317079, at *10 n.14 (quoting dissent). Rather, *Olsen I* assessed the validity of General Order 20-09 under the Speedy Trial Act and concluded that it was a

sufficient basis for a continuance. *Id.*; *see also id.* at \*4, \*10. That conclusion followed from *Olsen I*'s instructions to the district court. After correcting the district court's legal errors, *Olsen I* did not "remand[] the case to the district court to make an ends of justice determination under the correct reading of the statute" but instead "recounted the reasoning of the Central District's emergency orders, and then ordered the district court to grant 'an appropriate ends of justice continuance, and set [the] case for trial.'" *Id.* at \*10 n.14 (alteration in original) (quoting *Olsen I*, 21 F.4th at 1049).

There is no merit to defendant's suggestion that *Orozco-Barron*'s construction of *Olsen I* is not binding because "[t]he panel deciding this appeal can and must construe the mandate for itself." (DAB 47.) The law is clear that "[o]nce a panel resolves an issue in a precedential opinion, the matter is deemed resolved, unless overruled by the court itself sitting en banc, or by the Supreme Court." *Hart v. Massanari*, 266 F.3d 1155, 1171 (9th Cir. 2001). The issue presented here—the scope of *Olsen I*—was resolved by this Court's decision in *Orozco-Barron*. Accordingly, this panel must follow *Orozco-Barron* and reverse.

**B.    Even if the Mandate Rule Does Not Apply, the District Court's Dismissal Order Must Be Reversed**

Apart from the mandate, the district court committed multiple reversible errors.  Specifically, the court repeated the same errors in analyzing the merits of defendant's Speedy Trial Act claim and the appropriate remedy that previously required reversal.

### 1.    *The district court erred by finding a violation of the Speedy Trial Act*

To start, the government has explained why the district court erred by again finding a violation of the Speedy Trial Act.  (GOB 31-34.)  Defendant responds by engaging in a lengthy defense of the court's analysis of the *Olsen* factors.  (DAB 48-66.)  He also repeatedly claims that the government conceded that a jury trial could be held safely in October 2020.  (*See, e.g.*, DAB 3, 30-35, 47 n.142, 52-53, 56, 69, 72.)  But these arguments simply ignore the district court's multiple errors.

As a threshold matter, the government never conceded that a jury trial could be held safely in October 2020.  The government's opposition explained that "[d]efendant's argument that the Court could have conducted a safe trial was rejected in *Olsen*."  (2-ER-175.)  It continued: "But even assuming, for purposes of argument, that the Court could

9

have conducted a safe enough trial in October 2020, this is at most one factor in defendant's favor." (*Id.*) The government made no concession regarding safety in that passage—or anywhere else in the record. To the contrary, it highlighted *Olsen I*'s observation that "even though state courts within the Central District were conducting jury trials, that . . . did not necessarily mean that they were conducting those trials safely." (*Id.* (citing 21 F.4th at 1047 n.10).) That observation was prescient. As the concurral noted several months after *Olsen I* was issued, "four interpreters from the Los Angeles County courthouse died from COVID-19." *Id.* at 1054 n.3.

Relatedly, defendant chides the government for arguing that *Olsen I* rejected his safety claim (DAB 50-51), but he fails to identify any new facts or arguments that were not previously considered by this Court. Instead, he highlights the same two facts—that federal grand jury proceedings and state court trials were being held in October 2020 (DAB 52-53)—that he "repeatedly point[ed] to" in *Olsen I*. *See* 21 F.4th at 1043, 1047 n.10. And as this Court recently reiterated, those facts do not demonstrate that it was safe to hold jury trials. *See Orozco-Barron*, 2023 WL 4317079, at *9 ("In *Olsen*, 'grand juries had convened in the

federal courthouse' and the state court across the street was holding jury trials, and yet we held that the district court erred in not granting a continuance." (quoting 21 F.4th at 1043)).

In any event, defendant wrongly assumes that this appeal hinges upon the validity of the district court's safety finding. He urges that *Olsen I*'s comments about the absence of evidence regarding safety were actually an invitation for the district court to engage in more factfinding on this issue—which would be "dispositive" here. (DAB 53.) In reality, *Olsen I*'s point was that the Central District of California properly conducted its own "weighing" of the risks of holding jury trials during the height of the COVID-19 pandemic. 21 F.4th at 1054 n.3 (concurral). And the Central District made a reasonable decision to temporarily suspend jury trials because it "was likely unconvinced or uncertain that the safety protocols instituted by state courts were effective enough to combat the spread of COVID-19." *Id.* Even if defendant (or the district court) might have weighed the risks of COVID-19 differently—or thought that it was safe enough to hold trials—"[t]he Central District cannot be faulted for reaching a conclusion that is contrary to what [he] would have desired when deciding how best to protect its citizens

during a once-in-a-lifetime pandemic." *Id.*; *see also id.* at 1049 (panel opinion) ("The pandemic is an extraordinary circumstance and reasonable minds may differ in how best to respond to it.").[2]

The relevant question therefore is not whether the district court clearly erred in finding that it was safe to hold trials in October 2020. Rather, it is whether the court's finding of a Speedy Trial Act violation was consistent with the Act and this Court's binding precedent. For two reasons, it was not:

First, this Court's recent decision in *Orozco-Barron* makes clear that the district court misconstrued *Olsen I*. As *Orozco-Barron* explained, "*Olsen* concluded that the government was entitled to an ends of justice continuance" because "the Central District's emergency general orders were a sufficient basis 'to pause jury trials and exclude time under the Speedy Trial Act.'" *Id.* (quoting *Olsen I*, 21 F.4th at 1049); *see also id.* at *10. In light of this holding, the district court

---

[2] In this respect, *Olsen I* properly recognized that evaluating a speedy trial claim requires "a flexible functional analysis in weighing the various interests." *United States v. Williams*, 782 F.2d 1462, 1465 (9th Cir. 1985) (quotation marks omitted). That flexibility distinguishes this case from the other COVID-19 decisions cited by defendant (DAB 57-59), which addressed different rights and issues.

necessarily erred by concluding that the government was not entitled to an ends of justice continuance.

Defendant argues in a footnote that the facts of *Orozco-Barron* are distinguishable (DAB 47 n.142), but that is beside the point. *Orozco-Barron* clarified that the government was "entitled" to a continuance in *this case*; there is thus no need to speculate about how its holding applies here. And regardless, the facts of *Orozco-Barron* do not help defendant. As Judge Christen highlighted, Orozco-Barron had a stronger Speedy Trial Act claim because, unlike defendant, he "was detained pre-trial and nearly all of the excluded time at issue in [his] case occurred after jury trials had resumed." 2023 WL 4317079, at *13 (distinguishing *Olsen I*). Yet this Court still rejected his claim because "a global pandemic falls within the unique circumstances that permits a court to temporarily suspend a jury trial in the interest of public health and safety." *Id.* at *12. Therefore, the district court necessarily erred by rejecting defendant's weaker claim here.

Second, in addition to being inconsistent with *Olsen I*'s conclusion, the district court's decision was inconsistent with *Olsen I*'s reasoning. As previously explained, the court's speedy trial analysis contravened

*Olsen I* in several ways. (*See* GOB 32-34.) Most problematic was the court's analysis of whether failure to grant a continuance "would . . . result in a miscarriage of justice." 18 U.S.C. § 3161(h)(7)(B)(i). This Court previously had "no difficulty in concluding that the district court's failure to grant the government's motion and subsequent dismissal of Olsen's indictment, under the unique facts of Olsen's case and the Central District's suspension of jury trials, resulted in a miscarriage of justice." *Olsen I*, 21 F.4th at 1046. Nevertheless, the district court again reached the opposite conclusion on remand. (1-ER-32.)

Defendant contends that this disagreement was acceptable because the district court "properly took into account other important considerations—like the constitutional presumption of innocence and that the STA itself establishes the dismissal remedy." (DAB 60-61.) Under basic principles of appellate review and stare decisis, however, the district court was not free to "respectfully (or disrespectfully) disagree" with *Olsen I*'s conclusion that dismissal would result in a miscarriage of justice. *Hart*, 266 F.3d at 1170. Beyond that, the district court's reasoning was not persuasive because the two factors that it emphasized are present in *every case*, meaning that dismissal could

14

never be a miscarriage of justice.

Defendant's claim that this Court never opined on the "*weight* of this factor at all" is similarly misplaced. (DAB 61.) *Olsen I* explained that "the miscarriage-of-justice provision [was] particularly salient," 21 F.4th at 1046, and the concurral reiterated that it was "the most relevant factor" in this case, *id.* at 1050. Given this importance, the miscarriage-of-justice factor alone likely required the district court to grant an ends of justice continuance. Even if it did not, *Orozco-Barron* has removed any doubt that "the government was entitled to an ends of justice continuance" based on the totality of the circumstances. 2023 WL 4317079, at *4. As a result, the district court erred by reaching a contrary conclusion.

## 2. *The district court erred by dismissing the indictment with prejudice*

The district court separately erred by again dismissing the indictment with prejudice. (GOB 35-36.) As this Court previously explained, the district court erred in its first dismissal order by failing "to adequately consider all the relevant factors as applied to Olsen's case" and instead "focus[ing] only on the Central District's suspension of criminal jury trials and his disagreement with his colleagues' decision

15

to vote in favor of suspension." *Olsen I*, 21 F.4th at 1048. "The district court therefore committed legal error in failing to consider key factors relevant to Olsen's case: the absence of prosecutorial culpability and the multiple continuances requested by Olsen." *Id.* Despite this guidance, the district court made the same error in its second dismissal order. On remand, the judge again based his decision to dismiss with prejudice on a single consideration: his personal disagreement with his colleagues' decision to suspend jury trials.

Defendant insists that the district court actually did consider all of the relevant factors under 18 U.S.C. § 3162(a)(2), including the absence of prosecutorial culpability and the multiple continuances that he requested. (DAB 68-69.) But on the page of the dismissal order that he cites for this claim, 1-ER-38, there is no discussion of these factors. (DAB 69 n.209.) Rather, defendant highlights the district court's statement that it is "not the case that a dismissal with prejudice may occur only when the government is the source of the violation." (1-ER-38.) Even assuming that is an accurate summary of the law (DAB 69), this statement did not address the government's conduct or lack of

16

culpability in this particular case. And the court completely ignored defendant's prior requests for a continuance.

Similarly, defendant claims that the court adequately considered "the seriousness of the offense," § 3162(a)(2), by briefly referring to this factor in a footnote. (DAB 68.) Yet this footnote stated only that the court had "already evaluated the seriousness of the charges" as part of its analysis of the merits of defendant's Speedy Trial Act claim (1-ER-38 n.20), which presented a distinct question from the proper remedy for any violation of the Act. Moreover, the extent of that analysis was a brief acknowledgement that the charges are "serious"—followed by a statement that the court would afford this factor "little weight" because defendant is not accused of "violent crimes" and presumed innocent. (1-ER-36.) That assessment contradicted the district court's own prior recognition in the first dismissal order that the charges are, in fact, "extremely serious" (4-ER-481), as well as this Court's view that "Olsen's charges are extremely serious" because "he is a physician accused of illegally prescribing opioids that allegedly led to the deaths of four patients," *Olsen I*, 21 F.4th at 1057 (concurral). And again, this deficient analysis did not even concern the relevant question.

17

What is more, the court did not balance these factors (or any others) against the circumstances that it thought weighed in favor of dismissal with prejudice. As *Olsen I* explained, "[a] court's decision whether to dismiss the charges with or without prejudice depends on a careful application of [the § 3162(a)(2)] factors to each particular case." 21 F.4th at 1048 (quotation marks omitted). On remand, however, the district court "entirely failed to consider the facts and circumstances of Olsen's case." *Id.* Instead, the judge spent five pages excoriating his colleagues for temporarily suspending jury trials. (1-ER-39–43.) He then concluded that dismissal with prejudice was needed to "deter the Central District" from suspending trials "ever again." (1-ER-43.) That reasoning had nothing to do with the particular facts of this case.

Given its deficient analysis, the district court "committed legal error in failing to consider key factors relevant to Olsen's case." 21 F.4th at 1048. Therefore, the dismissal order also must be reversed because there was no basis to dismiss with prejudice.

**C.** **This Court Should Not Remand for Further Consideration of Defendant's Sixth Amendment Claim**

If this Court reverses, it should again remand with instructions to set a trial date. It should not, as defendant requests, order the district court to reconsider his Sixth Amendment claim. (DAB 70-71.)

As an initial matter, defendant's request is inconsistent with *Olsen I*'s resolution of his Sixth Amendment claim. In its first dismissal order, the district court declined to "perform a separate analysis to determine whether Mr. Olsen's Sixth Amendment right was violated" because it thought the Speedy Trial Act analysis was the same. (4-ER-480 n.12.) This Court held that this meant "the basis for the district court's dismissal order was statutory only," 21 F.4th at 1045 n.8, and ordered that the case be set for trial without further consideration of defendant's Sixth Amendment claim. As defendant notes (AOB 70), the district court included "a nearly-identical" statement in its second dismissal order declining to conduct a separate analysis of his Sixth Amendment claim (1-ER-17 n.7). As a result, this panel is bound to take the same approach it did before.

In any event, the district court already rejected defendant's claim that even if there was no violation of the Speedy Trial Act, he could still

19

establish a violation of the Sixth Amendment. When defendant raised that claim below, the court responded that "[i]f you don't have a Speedy Trial Act violation, I am hard-pressed to think how could you have a Sixth Amendment violation." (2-ER-86.) At least given the facts of this particular case, the court thought that "the Speedy Trial Act and Sixth Amendment are inextricably linked," and "the factors are basically the same." (2-ER-87–88.) Thus, the court declined to "[l]ook at the Sixth Amendment independently." (2-ER-87.)

Even if it had, the district court would have been compelled to reject defendant's Sixth Amendment claim. This Court has repeatedly concluded that similar delays caused by the COVID-19 pandemic did not violate the Sixth Amendment. *See, e.g.*, *United States v. Walker*, 68 F.4th 1227, 1239 (9th Cir. 2023); *United States v. Jones*, 2023 WL 4288349, at *2-3 (9th Cir. 2023) (unpublished); *United States v. Torres*, 2023 WL 4077347, at *1 (9th Cir. 2023) (unpublished); *United States v. Agli*, 2023 WL 2387580, at *1-2 (9th Cir. 2023) (unpublished); *United States v. Battle*, 2023 WL 2158807, at *1 (9th Cir. 2023) (unpublished). As in these cases, the relevant factors weigh against defendant because "[t]he delay was attributable first to defense-requested continuances

and then to the Central District of California's suspension of jury trials because of the COVID-19 pandemic"; he "asserted his right to a speedy trial only after requesting and acquiescing to continuances"; and he cannot show any "actual prejudice." *Torres*, 2023 WL 4077347, at *1 (rejecting similar Sixth Amendment claim). Accordingly, a remand to address this claim would be improper and would only further delay the trial that defendant purports to want.

### D. Reassignment Is Appropriate

Finally, this case should be assigned to another district judge on remand. While reassignment is reserved for "unusual circumstances," *United States v. Wolf Child*, 699 F.3d 1082, 1102 (9th Cir. 2012), such circumstances are present here. After this Court issued *Olsen I*, the district judge did not take the usual step of implementing the mandate. Instead, the judge told the parties that he was personally offended by this Court's opinion, conducted his own investigation of the facts, and then flouted the mandate by again dismissing the indictment. (GOB 37-39.) Given these actions, reassignment is appropriate.

Defendant's primary response is that the district judge actually did not ignore the mandate or commit any error (DAB 72), but that is

wrong for the reasons explained above. In addition, defendant claims that the government "unfairly characterizes" the judge's comments (*id.*), but there is no dispute that the judge referred to this Court's opinion as both "insulting" and "hostile." (2-ER-99; 3-ER-448.) Indeed, the judge suggested that this Court had called into question the "oath" that he took "to support and defend the Constitution." (3-ER-448.) These are not the usual comments of a judge who has been reversed. Rather, they show that reassignment is appropriate because "the judge's feelings . . . are both well-established and inappropriately strong." *Nat'l Council of La Raza v. Cegavske*, 800 F.3d 1032, 1046 (9th Cir. 2015).

Defendant also attempts to defend the district judge's decision to engage in his own investigation of the facts (DAB 72-73), but this Court has recognized that a trial judge should not make decisions based "on facts known to him from his personal experience," *United States v. Lewis*, 833 F.2d 1380, 1386 (9th Cir. 1987). Nor is there any exception when the investigation concerns the judge's own courthouse. (DAB 73.) "The problem attendant to a judge having personal knowledge of the facts is that he may thereby be transformed into a witness for one party." *Price Bros. Co. v. Phila. Gear Corp.*, 629 F.2d 444, 447 (6th Cir.

1980). That problem was present here, where the judge turned himself into a witness for defendant by supporting his dismissal order with facts he uncovered and photographs he took. Moreover, there was no need for the judge to take these actions. Defendant himself engaged in an extensive investigation of how courts in Southern California responded to the COVID-19 pandemic. (*See* 1-SER-73–74 (listing documents obtained by defendant's investigator); 4-SER-611–18 (photographs and diagrams of Orange County Superior Court obtained by defendant).) He did not need the judge's personal assistance.

Defendant's remaining objections to reassignment are not persuasive. (DAB 73-74.) His conclusory claim that the government is "forum shopping" (DAB 73) is an attack that could be leveled against any party seeking reassignment. And the government is not, as defendant contends, "hoping for reassignment" to a judge with any particular "opinions" about the Central District's jury trial suspension. (DAB 73.) The government simply seeks a judge who will follow this Court's mandate and set this case for trial.

Similarly, defendant is wrong that reassignment will cause "substantial waste and duplication." (DAB 73.) A new judge will not

need to expend "considerable effort" getting up to speed on his Speedy Trial Act claim because that claim was resolved by *Olsen I*. (DAB 73-74.)[3] Rather, reassignment will help prevent further waste by ensuring that the district court complies with this Court's mandate—instead of forcing a third appeal.

Accordingly, reassignment is appropriate. This Court has repeatedly ordered reassignment when a district judge flouts the mandate. *See, e.g.*, *United States v. Paul*, 561 F.3d 970, 975 (9th Cir. 2009) (per curiam); *United States v. Atondo-Santos*, 385 F.3d 1199, 1201 (9th Cir. 2004); *United States v. Sears, Roebuck & Co.*, 785 F.2d 777, 781 (9th Cir. 1986) (per curiam). It should do so again here.

---

[3] Defendant suggests that the government "seeks reassignment only if there will be further proceedings on the speedy-trial issues." (DAB 73.) That is incorrect. The government seeks reassignment to a new judge who will handle trial and all future proceedings.

# III

# CONCLUSION

This Court should reverse the order dismissing the indictment, remand with instructions to set this case for trial, and reassign this case to another district judge.

DATED:  July 13, 2023

Respectfully submitted,

E. MARTIN ESTRADA
United States Attorney

MACK E. JENKINS
Assistant United States Attorney
Chief, Criminal Division

BRAM M. ALDEN
Assistant United States Attorney
Chief, Criminal Appeals Section

*s/ David R. Friedman*

DAVID R. FRIEDMAN
Assistant United States Attorney
Criminal Appeals Section

Attorneys for Plaintiff-Appellant
UNITED STATES OF AMERICA

## CERTIFICATE OF COMPLIANCE

I certify that:

1.     This brief complies with the length limits permitted by Ninth Circuit Rule 32-1 because the brief contains 4,665 words, excluding the portions exempted by Fed. R. App. P. 32(f).

2.     This brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type-style requirements of Fed. R. App. P. 32(a)(6) because it has been prepared in a proportionally spaced typeface (14-point Century Schoolbook) using Microsoft Word 2016.

DATED:  July 13, 2023                    *s/ David R. Friedman*

                                                         DAVID R. FRIEDMAN
                                                         Attorney for Plaintiff-Appellant
                                                         UNITED STATES OF AMERICA